

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Zachary B. Stendig*
*Assistant United States Attorney*
*Zachary.Stendig@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4893*
*MAIN: 410-209-4800*
*FAX: 410-962-3124*

August 30, 2017

Gary Proctor, esq.
Law Office of Gary Proctor
8 E Mulberry St
Baltimore, MD 21202

    Re:    <u>United States v. Damion Jordan</u>
             Crim. No.: JFM-16-0499

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement, which has been offered to the defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provide below. If this offer has not been accepted by **October 13, 2017**, it will be deemed withdrawn. The terms of the agreement are as follows:

Offense of Conviction

1.     The Defendant agrees to plead guilty to Count One of the Indictment now pending against him, which charges him with interference with commerce by robbery in violation of 18 U.S.C. § 1951(a). The Defendant admits that he is, in fact, guilty of the offense and will so advise the Court.

Elements of the Offense

2.     The elements of the offense to which the defendant has agreed to plead guilty, and which this Office would have to prove if this matter proceeded to trial, are as follows:

On or around January 13, 2016, in the District of Maryland:

    a.     The defendant did unlawfully take and obtain money and property from the person and presence of an employee of the GameStop video game store located at 5768 Baltimore National Pike, Catonsville, Maryland;

    b.     That the taking of money was against the employee's will by means of actual and threatened force, violence, and fear of injury to the employee's person; and

c.      That the taking of money and property from the employee of the GameStop video game store affected, obstructed or interfered with interstate commerce as that term is defined in Title 18, United States Code, Section 1951, Subsection (b)(3).

## Penalties

3.      The offense to which the Defendant is pleading guilty carries a maximum penalty of 20 years of incarceration, which is followed by a term of supervised release of not more than three years, and a $250,000 fine.  In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C § 3013(a)(2)(A), which will be due and should be paid at or before the time of sentencing.  The Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3666A, and 3664.[1]  If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise.  The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked—even on the last day of the term—and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release.  The defendant understand that the Bureau of Prisons has sole discretion in designating the institution in which the defendant will serve any term of imprisonment.

## Waiver of Rights

4.      The defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.      If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel.  That trial could be conducted by a judge, without a jury, if the defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community.  Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily.  All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count.  The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt.  The Defendant would have the right to confront and cross-examine the Government's witnesses.  The Defendant would not have to present any defense witnesses or evidence whatsoever.  If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

---

[1]      Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C § 3612(f)(3).

d.       The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify.  If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.       If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against his.  By pleading guilty, the defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.       By pleading guilty, the defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the Waiver of Appeal paragraph below, to appeal the sentence.  By pleading guilty, the defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case.  Any statements the defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g.       If the Court accepts the defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h.       By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status.  Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States.  Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.       The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998.  The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.       This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

*Count of Conviction*

a.       The parties agree that the facts stated in Attachment A would establish that the Defendant committed the crimes charged in Count One of the Indictment.

*Relevant Conduct*

b.       The parties also agree that the facts stated in Attachment A would establish the Defendant committed the additional robberies listed below.  Therefore, calculation of the guidelines range for this plea agreement operates as if the Defendant had pled guilty to each of the robbery counts, pursuant to U.S.S.G. § 1B1.2(c).

Count One – January 13, 2016 GameStop Robbery
Base offense level 20
Increase 6 levels because a firearm was otherwise used (2B3.1(b)(2))
Adjusted offense level 26

7-Eleven Robbery on December 1, 2015
Base offense level 20
Increase 6 levels because a firearm was otherwise used (2B3.1(b)(2))
Adjusted offense level 26

Gaemstop Robbery on December 21, 2015
Base offense level 20
Increase 6 levels because a firearm was otherwise used (2B3.1(b)(2))
Adjusted offense level 26

GameStop Robbery on December 29, 2015
Base offense level 20
Increase 6 levels because a firearm was otherwise used (2B3.1(b)(2))
Adjusted offense level 26

GameStop Robbery on January 2, 2016
Base offense level 20
Increase 6 levels because a firearm was otherwise used (2B3.1(b)(2))
Adjusted offense level 26

GameStop Robbery (first) on January 4, 2016
Base offense level 20
Increase 6 levels because a firearm was otherwise used (2B3.1(b)(2))
Adjusted offense level 26

GameStop Robbery (second) on January 4, 2016
Base offense level 20
Increase 6 levels because a firearm was otherwise used (2B3.1(b)(2))
Adjusted offense level 26

7-Eleven Robbery on January 11, 2016
Base offense level 20
Increase 6 levels because a firearm was otherwise used (2B3.1(b)(2))

Adjusted offense level 26

*Combined Offense Level*

    c.    The individual robberies produce a combined offense level as follows:

Multiple Counts Adjustment (3D1.4)
Units – More than 5
Increase the highest group offense level (26) by 5 levels.
SUBTOTAL – 31

*Acceptance of Responsibility*

    d.    This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease by timely notifying the Government of his intention to enter a plea of guilty, thereby permitting the Government and the court to allocate their resources efficiently. This Office may oppose any adjustment for acceptance of responsibility if the Defendant a) fails to admit each and every item in the factual stipulation; b) denies involvement in the offense; c) gives conflicting statements about his involvement in the offense; d) is untruthful with the Court, this Office, or the United States Probation Office; e) obstructs or attempts to obstruct justice prior to sentencing; f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or g) attempts to withdraw his plea of guilty.

The total offense level is therefore a **28**.

7.    The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a Career Offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8.    This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Rule 11(c)(1)(C) Plea

9.    The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of imprisonment of 156 months in the custody of the Federal Bureau of Prisons is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful term of supervised release, fine, or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, *either* party

may elect to declare the agreement null and void.  Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

## Obligations of the United States Attorney's Office

10.     At the time of sentencing, the Government agrees to recommend a sentence of 156 months imprisonment, which shall be served concurrent to the outstanding sentences the defendant may be currently serving, and to dismiss any open counts.  The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

## Waiver of Appeal

11.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    e.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

    f.     The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that the term of imprisonment is greater than 156 months; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below a term of imprisonment of 156 months.

    g.     Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

    h.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this office or any investigating agency.

## Obstruction of Other Violations of the Law

12.     The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case.  In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this

agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

13.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. The Court is under no obligation to accept this plea agreement. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw his plea. If he persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. The Defendant understands that neither this Office, his attorney, nor the Court can make a binding prediction or promise that the Court will accept this agreement. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

14.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together, with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Stephen Schenning
United States Attorney

David Metcalf
Assistant United States Attorney

Zachary Stendig
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation that my attorney has provided me in this matter.

10/9/17
Date

Damion Jordan

I am Damion Jordan's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts the terms of this agreement. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

10/9/17
Date

Gary Proctor, Esq.

<u>Attachment A</u>

The parties agree that the Government could prove the following facts beyond a reasonable doubt at trial:

<u>December 1, 2015 (7-Eleven)</u>
On December 1, 2015, at approximately 1:20 a.m., the defendant and another person entered the 7-Eleven store located at 1611 Edmondson Avenue, Catonsville, Maryland. They brandished a firearm, and ordered the store clerk to lay on the floor. The two stole numerous packs of Newport cigarettes and money from the store's cash register. They then fled from the location.

<u>December 21, 2015 (GameStop)</u>
On December 21, 2015, the defendant and another person entered the GameStop store located at 3611 Washington Boulevard, Halethorpe, Maryland. The suspects brandished a firearm and demanded that the store employees give them the money from the cash registers. The pair then demanded that all of the associates and customers inside of the store enter the back stock room. There, the two demanded the cell phones of all of the occupants. The defendant and the other person took six (6) video game systems from the store as well as over $2,000 in cash.

<u>December 29, 2015 (GameStop)</u>
On December 29, 2015, the defendant and another person entered the GameStop store located at 3755 Old Court Road, Baltimore, Maryland. The suspects pointed a firearm at employees and customers and forced them into the rear of the store. They demanded that all store occupants deliver up their cellular phones. The defendant and his accomplice then removed xBox one gaming systems from the shelves and left the store.

<u>January 2, 2016 (GameStop)</u>
On January 2, 2016, the defendant and another person entered the GameStop store located at 14203 Baltimore Avenue, Laurel, Maryland. The two suspects were wearing hooded sweatshirts and masks. They brandished a firearm and demanded money from the store employees. The defendant and the other suspect ordered the customers and employees inside the store were to stand against the wall where they were forced to deliver up their phones and keys. The defendant and the other suspect took money from the cash register and assorted merchandise from the store. The defendant and the other suspect then exited the store.

<u>January 4, 2016 (GameStop) (First)</u>
On January 4, 2016, at approximately 7:31 p.m., the defendant and another person entered the GameStop store located at 7300 Ritchie Highway, Glen Burnie, Maryland. They pointed a firearm at employees and customers and demanded money from the store employees. The defendant and the other suspect took personal items from several store employees and then forced them into a room in the rear of the store. Prior to exiting the store, the defendant and the other suspect stole cash from the register and approximately seven (7) xBox one gaming systems.

<u>January 4, 2016 (GameStop) (Second)</u>
On January 4, 2016, at approximately 8:52 p.m., the defendant and another person entered the GameStop store located at 8067 Windsor Mill, Maryland. They pointed a firearm at,

and demanded money from, the store employees. One of the suspects grabbed two customers and took them to a back room. The second suspect asked the associates to open the cash registers and collected the money contained therein. After collecting the money, the defendant and the other suspect forced two store employees to the backroom. There, the two suspects stole cellphones from the employees and the customers. In addition to the money taken from the register, approximately four xBox items were stolen.

January 11, 2016 (7-Eleven)
On January 11, 2016, the defendant and another person entered the 7-Eleven store located at 1611 Edmondson Avenue, Catonsville, Maryland. They pointed a firearm at, and demanded money, from the store employees. The pair stole money from the register and numerous packs of Newport cigarettes. They then exited the store.

January 13, 2016 (GameStop)
On January 13, 2016, the defendant, Damion Jordan, and another man entered the GameStop store at 5768 Baltimore National Pike, Catonsville, Maryland. The GameStop store is a commercial business that buys and sells merchandise in interstate commerce.

At the time he entered the store, Damion Jordan was wearing a yellow construction vest and purple construction hat bearing the logo "DCS Staffing." The second suspect was wearing black sweatpants and a black hoodie. Damion Jordan pointed a revolver at a store employee and demanded all of the money in the register, while the second suspect demanded video games. The suspects thereafter instructed the employee and a male customer to go to the back of the store, at which point they robbed the store of seven PS4 gaming systems. The suspects then departed, and the employee dialed 9-1-1.

A police officer responded to the 9-1-1 call noticed a vehicle speeding away from the parking lot and gave chase. The suspect vehicle—in which Damion Jordan and the second suspect were driving—suddenly and recklessly evaded the officer, sped away, ran a stop sign, and nearly collided with several motorist and pedestrians during flight. Eventually, the Defendants' vehicle crashed near a Baltimore County Police station. The Defendant and the second suspect then exited the vehicle and fled on foot.

Thereafter, police apprehended Damion Jordan and another person. Police sought, obtained, and executed a search warrant of the vehicle. Investigators recovered video game consoles and materials matching the items stolen from the GameStop. Police recovered a revolver resembling that used in every previous robbery as well as an additional handgun.

The taking of money and property by the defendant affected, obstructed, interfered with and otherwise delayed commerce because it deprived the GameStop store of proceeds that it would have used to purchase and transact in interstate commercial goods, including goods manufactured outside Maryland, for sale within Maryland. The robbery also interfered with interstate commerce because the robbery caused the GameStop store to cease operation and to limit its operations while the victim and other employees responded to the robbery.

All events occurred in the District of Maryland.

David Metcalf
Assistant United States Attorney

Zachary Stendig
Assistant United States Attorney

I have read this Statement of Facts and carefully reviewed every part of it with my attorney.  I understand it, and I voluntarily agree to it.  I do not wish to change any part of it.

10/9/17
Date

Damion Jordan

I am Damion Jordan's attorney.  I have carefully reviewed every part of this Statement of Facts with him.  To my knowledge, his decision to sign it is a voluntary one.

10/9/17
Date

Gary Proctor, Esq.